**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1653-16T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

L.C.,

    Defendant-Appellant,

and

J.T.,

    Defendant.

_____

IN THE MATTER OF THE GUARDIANSHIP
OF H.E.T.,

    Minor.

_____

        Submitted October 11, 2017 — Decided October 30, 2017

        Before Judges Hoffman, Gilson and Mayer.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Passaic
        County, Docket No. FG-16-0086-15.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Anna Patras, Designated
        Counsel, on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Jesse J. Sierant, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Joseph Hector Ruiz, Designated Counsel, on the brief).

PER CURIAM

Defendant L.C. appeals from a December 8, 2016 judgment terminating her parental rights to her son H.E.T. (Harry), born in 2010.[1]  Defendant raises the following points of argument for our consideration:

> THE DECISION TO TERMINATE L.C.'S PARENTAL RIGHTS WAS NOT SUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE.
>
> [A.] PRONGS ONE & TWO: DCPP FAILED TO DEMONSTRATE BY CLEAR AND CONVINCING EVIDENCE A CAUSAL CONNECTION BETWEEN THE MOTHER'S ACTIONS AND HARM OR IMMINENT RISK OF HARM TO H.E.T. AND THAT THE MOTHER WAS UNWILLING OR UNABLE TO ELIMINATE THAT HARM.
>
> [B.] PRONG THREE: DCPP DID NOT PROVIDE "REASONABLE EFFORTS" []INCLUDING AN INQUIRY INTO ALTERNATIVES TO TERMINATION.
>
> [C.] PRONG FOUR: THE TRIAL COURT ERRED IN FINDING THAT THE TERMINATION OF THE MOTHER'S

---

[1] We use initials and pseudonyms to protect the family's privacy. Harry's biological father, J.T., voluntarily surrendered his parental rights before the proceedings under review.

PARENTAL RIGHTS WILL NOT DO MORE HARM THAN GOOD.

We find no merit in any of those arguments and, except as addressed herein, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

After a four-day trial, Judge Daniel J. Yablonsky found that the Division of Child Protection and Permanency (Division) satisfied the four prongs of the best interests test, N.J.S.A. 30:4C-15.1(a). We owe deference to Judge Yablonsky's decision, unless it was not supported by sufficient credible evidence or was otherwise "so wide of the mark that a mistake must have been made." N.J. Div. of Youth and Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citation omitted). Having reviewed the record in light of that standard, we find no basis to disturb the order on appeal. We affirm for the reasons stated by Judge Yablonsky in his comprehensive thirty-three-page written opinion issued on December 7, 2016, and for the reasons stated in this opinion.

Since Judge Yablonsky's opinion sets forth the essential facts, we need not repeat them here. To summarize, defendant's involvement with the Division began in July 2010, when the Division received a report, stating defendant lacked parenting skills to care for her infant son, Harry. In February 2011, defendant's mother contacted the Division and reported defendant smokes

marijuana daily, "drops [Harry] off at different people's houses to babysit," and leaves dog feces on the floor. When a caseworker visited defendant's home the following day, defendant stated her mother made the report because they had a physical altercation. Defendant denied smoking marijuana, but she submitted to a urine screen, which tested positive for marijuana.

Eventually, the Division removed Harry from defendant's care twice due to her alcohol and marijuana abuse, with the first removal occurring in February 2012. On April 30, 2012, defendant stipulated to child abuse or neglect due to her positive urine screens for marijuana and alcohol use while she was the sole caregiver of Harry. After the Division provided defendant with extensive services, and she completed a treatment program, the court ordered Harry returned to defendant's care in September 2013.

The second removal occurred in July 2014, after a Division caseworker conducted an unannounced visit at defendant's home and found defendant visibly intoxicated and incoherent while caring for Harry. Thereafter, the Division again provided defendant with substance abuse evaluations and treatment; however, she continued to relapse and test positive for both alcohol and marijuana.

Since December 2015, Harry has been with M.C., who wants to adopt him. Before that, Harry had been in and out of six other

foster homes. The Division investigated various potential relative caregivers, but ruled them out.

At trial, which began in June 2016, the Division presented testimony from two caseworkers, the foster mother, and Dr. Robert Kanen, a psychologist. Defendant testified on her own behalf and presented testimony from her expert, Dr. James Reynolds, also a psychologist. The court also considered numerous documents received in evidence.

Addressing prong one, the court found the Division provided defendant with appropriate services and extensive treatment for over five years, but defendant continued to relapse and could not sustain sobriety. The court also found that defendant's relapses and inability to maintain sobriety had caused harm to Harry by delaying their reunification process. In making that determination, the court relied on the testimony of both Dr. Kanen and Dr. Reynolds. The court also found that defendant's "sporadic visitations" with Harry had caused harm to the child.

Turning to prong two, the court found that defendant's history of substance abuse demonstrated she had little likelihood of successfully maintaining sobriety. The judge again relied on the testimony of both Dr. Kanen and Dr. Reynolds. The court also found defendant unable or unwilling to provide a safe and stable home for Harry.

A-1653-16T1

Addressing prong three, the court found the Division had provided defendant with reasonable services over the previous five years, including substance abuse treatment, parenting skills training, psychiatric evaluations, and visitation. The court also found the Division had investigated all potential relative caregivers, and all were "appropriately ruled out."

Finally, with regard to the fourth prong, again relying on expert testimony, the court found the record contained clear and convincing evidence that terminating defendant's parental rights would not do more harm than good. In particular, the court focused on Harry's need for permanency and found that adoption by the foster mother provided Harry the best prospect for achieving such permanency.

Defendant's arguments asserting the Division failed to satisfy prongs one and two of the best interests test clearly lack merit. See N.J.S.A. 30:4C-15.1(a)(1), -15.1(a)(2). A parent's "inability to provide a stable and protective home" for his or her child is highly relevant to whether he or she "can cease to inflict harm" on them. N.J. Div. of Youth and Family Servs. v C.S., 367 N.J. Super. 76, 118 (App. Div.), certif. denied, 180 N.J. 456 (2004). Further, a key issue is whether the parent "can become fit to assume the parental role within time to meet the child's

needs." N.J. Div. of Youth and Family Servs. v. F.M., 375 N.J. Super. 235, 258 (App. Div. 2005).

Defendant's continuing failure to provide Harry with a safe and stable home, and her inability to address her substance abuse issues, harmed Harry by causing him to remain in foster care since July 2014, moving among six different foster homes until his current placement with M.C. See N.J. Div. of Youth and Family Servs. v. R.G., 217 N.J. 527, 557 (2014) (citing In re Guardianship of K.H.O., 161 N.J. 337, 348-49 (1999)). Moreover, defendant's own expert opined that she was still not capable of acting as a parent by the time of the trial. See F.M., supra, 375 N.J. Super. at 258.

Defendant's arguments asserting the Division failed to satisfy prong three of the best interests test similarly lack merit. See N.J.S.A. 30:4C-15.1(a)(3). The third prong "contemplates efforts that focus on reunification of the parent with the child and assistance to the parent to correct and overcome those circumstances that necessitated the placement of the child into foster care." In re Guardianship of K.H.O., supra, 161 N.J. at 354. "Although the Division has a statutory duty to evaluate relatives as potential caretakers, there is no presumption favoring the placement of a child with such relatives." N.J. Div.

of Youth & Family Servs. v. J.S., 433 N.J. Super. 69, 82 (App. Div. 2013), certif. denied, 217 N.J. 587 (2014).

The record reflects the Division made numerous referrals (and sometimes re-referrals) for both substance abuse and psychological counseling. Although defendant did not receive all of the treatment recommended for her, this often occurred due to defendant's noncompliance or nonattendance, rather than the Division's failure to provide reasonable services. Additionally, we reject defendant's contention that the Division arbitrarily ruled out Harry's relatives as placements in order to terminate her parental rights. The record provides no support for this claim.

Defendant's arguments asserting the Division failed to satisfy prong four of the best interests test also lacks merit. See N.J.S.A. 30:4C-15.1(a)(4). As explained by our Supreme Court:

> When a parent has exposed a child to continuing harm . . . and has been unable to remediate the danger to the child, and when the child has bonded with foster parents who have provided a nurturing and safe home, in those circumstances termination of parental rights likely will not do more harm than good.
>
> [N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 108 (2008).]

Defendant argues the Division impermissibly limited visitation between her and Harry in order to "strengthen its case

and limit [her] defenses going forward." Furthermore, by providing inadequate visitation, defendant argues that the Division "manipulated the situation to deprive [her] of a meaningful opportunity to maintain and strengthen her bond with Harry. . . ." Defendant's argument, however, ignores the fact that she often missed her scheduled visits with Harry and failed to maintain the schedule the Division provided. According to a Division caseworker, defendant often would arrive thirty to forty minutes late to her visits, cancel her visits, or confirm her visits but not show up.

Defendant's reliance on her visitation schedule is misplaced; it fails to address the crux of the fourth prong's inquiry — whether terminating defendant's parental rights would cause Harry more harm than good. The Division placed Harry with M.C., who wants to adopt Harry in order to provide him with a stable home. Both parties' expert witnesses testified that M.C. is a stable caretaker, and Dr. Kanen asserted Harry would "experience severe distress" if removed from her care. The record does not support defendant's argument that termination of her parental rights will do more harm than good.

Defendant's arguments do not warrant further discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION